# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL RENO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 10 C 6114 |
| v. | ) |
| | ) |
| THE CITY OF CHICAGO, *et al.*, | ) |
| | ) |
| Defendants, | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On March 30, 2011, Plaintiff Michael Reno brought a two-count First Amended Complaint against Defendant Chicago Police Officers Keith Harris, Jerome Hoffman, Khaled Shaar, and Nelson Gonzalez, as well as the City of Chicago, alleging a Fourth Amendment false arrest claim, *see* 42 U.S.C. § 1983, and a state law malicious prosecution claim. *See* 28 U.S.C. §§ 1331, 1367(a). Before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). For the following reasons, the Court denies Defendants' summary judgment motion.

## BACKGROUND

### I. Northern District of Illinois Local Rule 56.1

Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). "The Rule is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time

combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Pursuant to the Local Rules, the Court will not consider any additional facts proposed in the nonmoving party's Local Rule 56.1(b)(3)(B) Response, but must rely on the nonmovant's Local Rule 56.1(b)(3)(C) Statement of Additional Facts. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643 (7th Cir. 2008).

The purpose of Local Rule 56.1 statements is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). Moreover, the requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon,* 233 F.3d at 528. The Court may also disregard statements and responses that do not properly cite to the record. *See Cady,* 467 F.3d at 1060; *Cichon,* 401 F.3d at 809-10. With these standards in mind, the Court turns to the relevant facts of this case.

2

## II. Relevant Facts

Chicago police officers arrested Reno on March 28, 2009, near the intersection of 79th and Essex Streets on Chicago's south side. (R. 86, Defs.' Rule 56.1 Stmt. Facts ¶ 7.) On that date, Defendant Officers were working as part of the Narcotics Division of the Chicago Police Department. (*Id*. ¶ 11.) More specifically, Defendant Officers, along with other police officers, were working together on a Surgical Strike Mission and were in the area of 79th and Essex Streets as part of this team. (*Id*. ¶¶ 13, 14.) The Surgical Strike Mission sets up "controlled buys" using undercover police officers. (*Id*. ¶ 14.)

As part of the Surgical Strike team that day, Defendant Officer Gonzalez was a surveillance officer, whose job it was to watch the undercover or "buy officer" for safety reasons and to document the events as they unfold. (*Id*. ¶ 15.) Defendant Officer Harris was the "buy officer" on the day of Reno's arrest. (*Id*. ¶ 16.) When executing a controlled buy, Defendant Officer Harris uses money known as "1505 funds," that eventually help the officers locate the offender of the controlled buy. (*Id*. ¶ 17.) Surveillance officers and buy officers travel in covert vehicles and dress in plain clothes, whereas enforcement officers are more visible. (*Id*. ¶ 18.) On the day of the incident, Defendant Officers Hoffman and Shaar were enforcement officers, who were tasked with detaining the offender after the controlled buy occurred. (*Id*. ¶ 19.)

What happened next on March 28, 2009 is hotly disputed by the parties. Defendant Officers maintain that Defendant Officer Gonzalez, who was in a covert vehicle by himself, went to the area of 79th Street and Essex where he observed Reno conducting what appeared to be narcotic-related hand-to-hand transactions with passers-by. (*Id*. ¶¶ 22, 24.) Defendant Officers further assert that after each transaction, Reno would go into one of the stores at the corner of

3

79th Street and Essex, including an ABC cellular store. (*Id*. ¶ 26.) After Defendant Officer Gonzalez saw Reno's first and second hand-to-hand transactions, he radioed his team giving them a description of Reno. (*Id*. ¶¶ 27-29.) Also, Defendant Officers contend that when Defendant Officer Harris got out of his vehicle in the area, he saw the individual – later identified as Reno – who Defendant Officer Gonzalez had previously described. (*Id*. ¶ 38.) Defendant Officer Harris then asked Reno whether he had any "rocks" of cocaine after which Reno allegedly asked Officer Harris how many he wanted. (*Id*. ¶¶ 40, 41.) Then, Defendant Officer Harris tendered to Reno 1505 funds in a total amount of $10. (*Id.* ¶ 42.) Defendants maintain that Reno then took the money and went into a store after which he came back outside and conducted a hand-to-hand transaction with Defendant Officer Harris. (*Id.* ¶¶ 43, 44.) Thereafter, Defendant Officer Harris radioed the other officers and Defendant Officers Hoffman and Shaar arrived on the scene and went into the store looking for Reno. (*Id.* ¶¶ 51-55.) When they arrived in the store, there were three individuals, including an individual who matched Defendant Officers Gonzalez's and Harris' descriptions, who was later identified as Reno. (*Id*. ¶ 56.) The officers asked Reno to exit the store at which time they received a positive identification from Defendant Officer Harris. (*Id*. ¶ 65.) The officers then took Reno into custody. (*Id*. ¶ 68.)

Reno, on the other hand, denies that he ever engaged in hand-to-hand transactions in the area of 79th and Essex Streets. (R. 93, Pl.'s Rule 56.1 Stmt. Add'l Facts ¶ 1.) Instead, Reno maintains that he went into the S and K record store on the southwest corner of 79th and Essex because he knew the owners of the store and wanted to play a video game. (*Id*. ¶ 2.) Reno does admit, however, that he said hello to some people he knew at the intersection while on his way to

4

the S and K record store. (*Id.* ¶ 3.) Moreover, Reno denies that he engaged in any conversations or sold drugs to Defendant Officer Harris. (*Id.* ¶ 5.) Reno further asserts that when he was at the police station, one of the officers told him that a "crackhead gave him up" and that the officers did not tell him he was being arrested for selling drugs to an undercover police officer. (*Id.* ¶ 8.)

Meanwhile, the parties do not dispute that although the police officers recovered money from Reno, the money in his possession did not match the money on the 1505 funds log. (Defs.' Stmt. Fact ¶ 70.) Also, after the police discovered that the money did not match the 1505 funds log, Defendant Officer Shaar went back into the S and K record store and asked the woman behind the counter if Reno had given her money, but she answered no. (*Id.* ¶ 72.) In fact, the officers never recovered the 1505 funds. (*Id.* ¶ 76.) Also, the police officers did not recover any narcotics from Reno after conducting a search incident to his arrest. (*Id.* ¶¶ 74, 79.) Finally, on December 7, 2009, a judge in the Circuit Court of Cook County conducted a bench trial finding Reno not guilty of unlawful delivery of a controlled substance. *See* 720 ILCS 570/401.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that

5

there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). "[D]istrict courts presiding over summary judgment proceedings may not weigh conflicting evidence or make credibility determinations, both of which are the province of the jury." *Omnicare, Inc. v. UnitedHealth Grp., Inc.,* 629 F.3d 697, 704-05 (7th Cir. 2011) (internal citations omitted).

## ANALYSIS

**I.      Fourth Amendment False Arrest Claim – Count I**

In their motion for summary judgment, Defendants argue there are no genuine disputes as to any material fact that a reasonable police officer could have concluded that there was probable cause to arrest Reno. "The existence of probable cause to arrest a suspect for any offense, even one that was not identified by the officers on the scene or in the charging documents, will defeat a Fourth Amendment false-arrest claim." *Sroga v. Weiglen,* 649 F.3d 604, 608 (7th Cir. 2011). Probable cause exists if "at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Gonzalez v. City of Elgin,* 578 F.3d 526, 537 (7th Cir. 2009). "In evaluating probable cause, [courts] look only to the information known to the officer at the time of arrest, and []view the circumstances of the arrest from the perspective of a reasonable person in the position of the officer." *Mucha v. Village of Oak Brook,* 650 F.3d 1053, 1057 (7th Cir. 2011).

Defendant Officers' probable cause arguments fail because the events that occurred before, during, and after Reno's arrest on March 28, 2009 are factually disputed.[1] As the Seventh Circuit has repeatedly cautioned, "[i]t is not for courts at summary judgment to weigh evidence or determine the credibility of [a witness's] testimony; we leave those tasks to factfinders." *O'Leary v. Accretive Health, Inc.,* 657 F.3d 625, 630 (7th Cir. 2011) (citation omitted). Indeed, at this procedural posture, the Court must view the facts and all reasonable inferences in Reno's favor to determine whether Defendant Officers had probable cause to arrest him. *See Reher v. Vivo,* 656 F.3d 772, 776 (7th Cir. 2011). Drawing all reasonable inferences and viewing the facts in a light most favorable to Reno, he has presented sufficient evidence creating a genuine dispute as to the material fact that although he was at the intersection of 79th and Essex on March 28, 2009, he went to a store in that area to play a video game. Further, Reno denies his involvement in any drug transactions that day, including any conversations or interactions with Defendant Officer Harris. Also, there is undisputed evidence in the record that although the police officers recovered money from Reno, the money in his possession did not match the money on the 1505 funds log. In fact, the officers never recovered the 1505 funds nor did they recover any narcotics from Reno after searching him. In sum, there are genuine issues of material fact regarding whether a reasonable officer could have concluded that there was probable cause to arrest Reno for any offense, including unlawful delivery of a controlled

---

[1] In their reply brief, Defendant Officers assert that because Reno's version of the facts is based on his "self-serving" declaration, there are no genuine issues as to the material facts surrounding his arrest. Although litigants cannot manufacture issues of fact by submitting declarations that contradict the substance of their prior sworn testimony, *see McCann v. Iroquois Mem. Hosp.,* 622 F.3d 745, 751 (7th Cir. 2010), Reno's later-filed declaration is completely consistent with his deposition testimony. Therefore, Defendant Officers' argument concerning Reno's self-serving affidavit is without merit.

substance under 720 ILCS 570/401.  As such, Defendant Officers have failed to establish that there are no genuine disputes to any material fact and that they are entitled to judgment as a matter of law as to Reno's false arrest claim.  *See* Fed.R.Civ.P. 56(a).

Nevertheless, Defendant Officers argue that they are entitled to qualified immunity as to Reno's Fourth Amendment false arrest claim.  *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  "In actions under 42 U.S.C. § 1983 alleging violations of constitutional rights, qualified immunity shields an official from liability for civil damages, provided that the illegality of the official's conduct was not clearly established at the time he acted."  *Roe v. Elyea,* 631 F.3d 843, 858 (7th Cir. 2011).  In determining whether Defendant Officers are entitled to qualified immunity, the Court must decide if:  (1) the facts, taken in a light most favorable to Reno, make out a violation of a constitutional right; and (2) whether the right was clearly established at the time of Defendant Officers' alleged misconduct.  *See Pearson v. Callahan*, 555 U.S. 223, 236-42, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009); *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

As discussed above, construing the facts and all reasonable inferences in Reno's favor, he has made out a violation of a Fourth Amendment false arrest claim.  In addition, Defendant Officers' argument that they had "arguable probable cause" is unavailing because Reno presents sufficient facts that wholly dispute his involvement in the conduct that Defendant Officers rely upon in arguing that they had probable cause to arrest him.  *See Jones v. Clark,* 630 F.3d 677, 684 (7th Cir. 2011).  In other words, because the facts within the Defendant Officers' knowledge at the time of Reno's arrest are a matter of dispute between the parties, the Court cannot grant Defendant Officers' motion for summary judgment on the basis of "arguable probable cause."

Last, [t]he probable cause standard – requiring that an officer's knowledge of the facts be sufficient to warrant a prudent person in believing that the suspect had committed or was committing a crime – was clearly established at the time of this incident." *Gossens v. Teske,* 284 F.3d 765, 772 (7th Cir. 2002). Therefore, Defendant Officers' qualified immunity arguments as to both *Saucier* prongs fail. The Court thereby denies Defendant Officers' summary judgment motion as to Count I of the First Amended Complaint.

## II.     Malicious Prosecution – Count II

Next, Defendants maintain that Reno has failed to present sufficient evidence in support of his malicious prosecution claim. To prevail on a malicious prosecution claim under Illinois law, a plaintiff must establish "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Holland v. City of Chicago,* 643 F.3d 248, 254 (7th Cir. 2011) (quoting *Swick v. Liautaud,* 169 Ill.2d 504, 215 Ill.Dec. 98, 662 N.E.2d 1238, 1242 (1996)); *see also Mosley v. City of Chicago*, 614 F.3d 391, 399 (7th Cir. 2010). "The absence of any single element is fatal to a claim." *Holland*, 643 F.3d at 254.

In their summary judgment motion, Defendant Officers argue that Reno has failed to present sufficient evidence that they acted with malice. A "plaintiff may demonstrate malice by showing that the prosecutor proceeded with the prosecution for the purpose of injuring plaintiff or for some other improper motive." *Aguirre v. City of Chicago,* 382 Ill.App.3d 89, 97, 320 Ill.Dec. 512, 887 N.E.2d 656 (1st Dist. 2008); *see also Aleman v. Village of Hanover Park,* 662 F.3d 897, 907 (7th Cir. 2011) ("Illinois law requires, to show malicious prosecution, proof not

9

only of lack of probable cause but also of 'malice,' which means in this context that the officer who initiated the prosecution had 'any motive other than that of bringing a guilty party to justice.'") (citation omitted). "Lack of probable cause does not itself establish malice, but the trier of fact may infer malice from lack of probable cause if there is no other credible evidence which refutes the inference." *Rodgers v. Peoples Gas, Light & Coke Co.*, 315 Ill.App.3d 340, 349, 248 Ill.Dec. 160, 733 N.E.2d 835, 842 (1st Dist. 2000).

As discussed above, there are genuine issues of material fact concerning the events surrounding Reno's arrest, therefore, probable cause is a question for the jury. *See O'Leary,* 657 F.3d at 630. Moreover, the record contains sufficient evidence – when viewing the facts and inferences in Reno's favor – that give rise to a genuine factual issue whether Defendant Officers acted with malice in initiating Reno's prosecution based on the undisputed facts that although the police officers recovered money from Reno, the money in his possession did not match the 1505 funds and that the police officers did not recover any narcotics from Reno after conducting a search incident to his arrest. *See Holland,* 643 F.3d at 255 ("malice can be inferred when a defendant lacks probable cause and the circumstances indicate a lack of good faith"); *see, e.g., Jimenez v. City of Chicago,* 830 F.Supp.2d 432, 451 (N.D. Ill. 2011).[2]

Last, Defendant Officers maintain that they are entitled to immunity under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, namely, 745 ILCS 10/2-

---

[2] Under Illinois law, a defendant must have played a significant role in causing or initiating the prosecution of a plaintiff to be liable for malicious prosecution. *See Rodgers v. Peoples Gas, Light & Coke Co.,* 315 Ill.App.3d 340, 348-49, 248 Ill.Dec. 160, 733 N.E.2d 835 (1st Dist. 2000); *see also Logan v. Caterpillar, Inc.,* 246 F.3d 912, 922 (7th Cir. 2001). Here, the parties do not discuss which Defendant Officers did or did not play a significant role in initiating the prosecution against Reno.

202, which states a "public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." The Illinois Tort Immunity Act, however, contains "a more specific immunity provision that applies to law enforcement, which essentially mirrors and codifies the malicious prosecution standard." *Holland,* 643 F.3d at 255 (citing 745 ILCS 10/2–208). Section 10/2-208 provides that a "public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, unless he acts maliciously and without probable cause."

Because Reno has presented evidence creating a genuine dispute as to the material facts that Defendant Officers did not have probable cause to arrest him and that they acted with malice in initiating his prosecution, Defendant Officers have not established that the Illinois Tort Immunity Act applies to their conduct at this procedural posture. The Court therefore denies Defendants' summary judgment motion as to Count II of the First Amended Complaint.

## CONCLUSION

For the these reasons, the Court denies Defendants' Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56(a).

**Date:** June 21, 2012

                                  **ENTERED**

                                  *[signature]*

                                  **AMY J. ST. EVE**
                                  **United States District Court Judge**